UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY LEE BALDWIN,

    Plaintiff,

v.

BRIAN CLEVELAND,

    Defendant.

Case No. 25-cv-05898-PCP

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND, GRANTING *IN FORMA PAUPERIS* APPLICATIONS**

Re: Dkt. Nos. 7, 8

Anthony Baldwin filed this *pro se* civil rights action under 42 U.S.C. § 1983 regarding events which occurred while he was incarcerated in Santa Cruz County, California. Dkt. No. 6 ("Complaint"). For the reasons stated below, the Complaint is dismissed with leave to amend. Mr. Baldwin's motions to proceed *in forma pauperis* are granted.

**I.**    **Background**

At all relevant times, Mr. Baldwin was incarcerated at a detention facility in Santa Cruz County, California. *See generally* Compl. As a defendant, Mr. Bailey names only Chief of Jail Operations Cleveland. *Id*. at 2.[1]

Mr. Baldwin alleges that he is hearing-impaired. Compl. at 5. His impairment leaves him "unable to hear the dayroom TV or … the IPs tablet system." *Id*. Mr. Baldwin requested "either headphones or a personal sound amplifier" for his disability. *Id*. at 7. Defendant Cleveland denied Mr. Baldwin's request due to security concerns. *See id*. at 7, 13. However, defendant Cleveland referred Mr. Baldwin to the jail's medical department, which in turn referred Mr. Baldwin to an audiologist for hearing aids. *See id*. at 14. Defendant Cleveland noted Mr. Baldwin's "ADA

---

[1] Pinpoint citations are to the page numbers assigned by the Court's CM/ECF case management system.

paperwork says to speak loudly and clearly [but] does not say to provide ear buds." *Id*. at 21. He also noted that jail staff had "sp[oken] loudly and clearly" to Mr. Baldwin as called for, that the jail-issued tablets "provide different volume setting[s]," and that it was apparent Mr. Baldwin had no issues communicating "with friends or family" during "video visits" on his tablet. *Id*. at 14, 18. Mr. Baldwin responded that he specifically wanted to be able to hear "dialogue in the movies" "in the day room." *Id*. at 20.

Mr. Baldwin contends that requiring him to wait for hearing aids, rather than immediately issuing earbuds, violates his rights under the Eighth and Fourteenth Amendments to the United States Constitution, under the Americans with Disabilities Act ("ADA"), under the California Constitution, and under several California statutes. *See id*. at 3. He also seeks to bring a *Monell* claim. *See id*. at 14.

## II.     Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.     Analysis

At this time, Mr. Baldwin has not alleged a cognizable claim. The Court grants Mr. Baldwin leave to amend so that he may provide additional facts to allege a claim, if he is able truthfully to do so.

"'The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer*, 511 U.S. at 832 (citation omitted). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious,

2

and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 298 (1991)). Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Where a prisoner received medical treatment but wanted his doctors to pursue a different course of treatment, he must "show that [the doctor's] chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health,'" in order to state a deliberate indifference claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Although it does not seem likely that Mr. Baldwin will be able to show it was "medically unacceptable under the circumstances" for the jail to issue him hearing aids rather than earbuds, the Court will allow leave to amend so that Mr. Baldwin may allege as much.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Different treatment of unlike groups does not support an equal protection claim. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005). Conclusory allegations will not do. *See Ventura Mobilehome Comms. Owners Ass'n v. City of Buenaventura*, 371 F.3d 1046, 1055 (9th Cir. 2004) (affirming dismissal of equal protection claim because "[a]side from conclusory allegations, Appellant has not . . . alleged how [similarly situated individuals] are treated differently"). Here, to state an equal protection claim, Mr. Baldwin at least must identify some group of people who were permitted to use earbuds when he was not.

3

Similarly, more information is needed before Mr. Baldwin may state an ADA claim. "To state a claim under … the ADA, a plaintiff generally must show: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability." *Hyer v. City of Honolulu*, 118 F.4th 1044, 1065 (9th Cir. 2024) (quotation marks and citation omitted). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. *See Weinreich v. Los Angeles County MTA*, 114 F.3d 976, 979 (9th Cir. 1997) (no claim under ADA or Rehabilitation Act where disabled individual's exclusion from transit program was based on his financial inability to provide updated information that he still qualified for program, not on his disability). A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide. *See id.* at 978. The entity providing an accommodation must "'honor the person's choice [of reasonable accommodation], *unless* it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration [to the entity's program] or in an undue burden." *Bax v. Doctrs Med. Ctr. Of Modesto*, 52 F.4th 858, 868 (9th Cir. 2022) (internal quotation marks and citation omitted, emphasis added). Here, Mr. Baldwin concedes that Defendant Cleveland denied the request for earbuds due to security concerns. *See* Compl. at 13. Defendant Cleveland's attempt to refer Mr. Baldwin for hearing aids in lieu of earbuds appears to be a reasonable accommodation for Mr. Baldwin's disability. On amendment, Mr. Baldwin must provide some facts to explain why hearing aids were not a reasonable substitute for his preferred earbuds.

Mr. Baldwin's state-law claims are not cognizable at this time. Although the Court may be able to exert supplemental jurisdiction over those claims, there first must be "claims in the action within such original jurisdiction that they form part of the same case or controversy" as the state-

4

law claims. 28 U.S.C. § 1367(a). Because Mr. Baldwin has yet to state a cognizable federal claim, the Court cannot yet exert supplemental jurisdiction.

**IV.     Conclusion**

1.     The Complaint does not state a cognizable claim at this time. The Complaint is DISMISSED WITH LEAVE TO AMEND. If he truthfully can provide facts to support a claim, Mr. Baldwin may amend his claim.

2.     The AMENDED COMPLAINT shall be filed within **thirty-five days** from the date this order is filed. The amended complaint must include the caption and civil case number used in this order (25-cv-5898-PCP) and the words AMENDED COMPLAINT on the first page. In the amended complaint, Mr. Baldwin must allege facts that demonstrate he is entitled to relief on every claim. An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

3.     It is Mr. Baldwin's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

4.     Mr. Baldwin is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

5.     Mr. Baldwin's motions to proceed *in forma pauperis* are GRANTED. *See* Dkt. Nos. 7, 8. The initial partial filing fee is $4.80. *See* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater). A copy of this order and the attached instructions will be sent to Mr. Baldwin via U.S. mail, to the Santa Cruz County Jail, and to the court's financial office via email at CAND_Finance@cand.uscourts.gov.

**IT IS SO ORDERED.**

Dated: November 25, 2025

P. Casey Pitts
United States District Judge

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid. If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

The prisoner's name and case number must be noted on each remittance. The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:     Plaintiff/Petitioner

                                                              Court's Finance Office
                                                              United States District Judge